2 S.W.3d 618 (1999)
In the Interest of P.M.B.
No. 14-98-00224-CV.
Court of Appeals of Texas, Houston (14th Dist.).
August 31, 1999.
*620 Lisa Ann Hubacek, College Station, TX, for appellant.
Angela Nichols, Lusby, Larry A. Catlin, Bryan, TX, for appellees.
Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

OPINION
RICHARD H. EDELMAN, Justice.
Michael Lynn Bruno, II, appeals an order modifying the conservatorship of a child in favor of Angela Leigh Nichols on the grounds that the trial court erred in: (1) denying his motion for new trial based on newly discovered evidence; (2) granting Nichols's motion for sanctions; (3) refusing to allow Bruno to cross-examine the author of a court-ordered social study, even though the court had taken judicial notice of the study, or in the alternative, in failing to strike the social study; (4) refusing to hear testimony from a court-appointed psychologist and in revoking its judicial notice of the psychologist's report on file with the court; (5) denying Bruno's motion for continuance or motion for enlarging time to file answers to discovery as a lesser sanction under rule 215; and (6) modifying the conservatorship because there was no evidence or insufficient evidence to support the trial court's findings that a material and substantial change had occurred, the previous order was unworkable, the modification would be a positive improvement for the child, and the modification is in the best interest of the child. We reverse and remand.

Background
Bruno and Nichols were married in 1989, and had one child, P.M.B., in 1991. They divorced in 1992 and were appointed joint managing conservators with Bruno having the exclusive right to establish the child's domicile. Bruno and Nichols each remarried.
*621 In March of 1995, Nichols filed a motion to be appointed joint managing conservator with the exclusive right to establish the child's domicile or, in the alternative, sole managing conservator. At the same time, Nichols served interrogatories and requests for production of documents on Bruno.
In February of 1996, Nichols filed a motion to compel responses to her discovery requests. However, the parties thereafter agreed to exchange discovery information informally and advised the court that it was not necessary to hear the motion to compel. When the case was first tried, the trial court modified the conservatorship to appoint Nichols as the parent with the right to establish the child's domicile but later granted Bruno's motion for new trial. No objection was made at the first trial to any evidence based on any failure by Bruno to provide requested discovery.[1]
In April of 1997, Bruno served interrogatories and requests for production on Nichols. On Wednesday, May 28, 1997, Nichols filed a motion for protection from Bruno's discovery requests. On Friday, May 30, Nichols filed a motion for sanctions for Bruno's failure to answer the discovery requests Nichols had propounded before the first trial. The trial court held a hearing on the motion for sanctions on the following Monday, June 2, the first day of trial on the motion to modify conservatorship.
After hearing conflicting testimony from Nichols's attorney, Braneff, and from Bruno's prior and current attorneys, Swim and Young, regarding whether Braneff had notified Bruno that the previously exchanged discovery information was insufficient, the trial court granted Nichols's motion for sanctions and ordered that any of Bruno's witnesses or documents that would have been identified or produced in response to Nichols's unanswered discovery requests were to be excluded from evidence at trial. The trial court further denied Bruno's motions for enlarging time to answer the discovery and for continuance and granted Nichols's motion for protection from answering Bruno's discovery. During trial, the trial court excluded various evidence offered by Bruno based on the sanctions order and refused Bruno's tender of a bill of exceptions. After trial, the court granted a modification of conservatorship whereby Nichols became the parent with the right to establish the child's domicile, and it entered findings of fact and conclusions of law.

Sufficiency of the Evidence
Bruno's sixth through ninth points of error, in part, challenge the legal sufficiency of the evidence to support the trial court's modification.[2]
A trial court's modification of conservatorship is reviewed for abuse of discretion.[3] It is an abuse of discretion for a trial court to rule without supporting evidence. See General Tire, Inc. v. Kepple, 970 S.W.2d 520, 525 (Tex.1998). A trial court's findings of fact are reviewed for sufficiency of the evidence by the same standards as are applied in reviewing the sufficiency of evidence to support a jury verdict. See Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.1991). When reviewing the legal sufficiency of evidence, we consider only the evidence *622 and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. See Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex.1998). If more than a scintilla of evidence favors a finding, the legal sufficiency challenge fails. See Minnesota Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 738 (Tex.1997).
A court may modify the terms and conditions of a joint conservatorship order if: (1)(A) the circumstances of the child or of one or both of the joint managing conservators have materially and substantially changed since rendition of the order; or (B) the order has become unworkable or inappropriate under existing circumstances; and (2) a modification of the terms and conditions of the order would be a positive improvement for and in the best interest of the child. See TEX. FAM.CODE ANN. § 156.202 (Vernon 1996). Bruno's sixth through ninth points of error challenge the legal sufficiency of the evidence to support the trial court's findings on each of these elements.
Nichols asserted at trial that Bruno's and the child's circumstances had materially and substantially changed because Bruno had moved several times and changed jobs.[4] Although moving alone is not a material enough change to support modification of conservatorship, it is a factor that may combine with others to satisfy the change element. See Scroggins v. Scroggins, 753 S.W.2d 830, 832 (Tex.App.-Houston [1st Dist.] 1988, no writ); see also Short v. Short, 163 Tex. 287, 354 S.W.2d 933, 936 (1962); In re Soliz, 671 S.W.2d 644, 648 (Tex.App.-Corpus Christi 1984, no writ). Moreover, beneficial changes in jobs and locations do not warrant modification. See Short, 354 S.W.2d at 936; Soliz, 671 S.W.2d at 648. In this case, the evidence of Bruno's moving and changing jobs does not reflect an adverse effect on the child which warrants a change in conservatorship.
Nichols further asserts that her own circumstances have materially and substantially changed because she has returned from military service in Korea, remarried, and had another child. However, these circumstances are also not material and substantial changes dictating a change in conservatorship.[5]
Nichols also presented evidence that the child's circumstances with respect to his emotional and physical well-being had materially and substantially changed. Nichols stated that she was concerned about what she believes was Bruno's excessive disciplining of the child. Nichols indicated that the child is anxious about getting into trouble and becomes upset if he thinks he has done something wrong because he is afraid of being punished. Nichols's new husband further testified *623 that the child "flinches" when he makes a mistake such as spilling something. Both Nichols and her husband further stated that after the child has been with Bruno, the child's clothes are dingy and smell of cigarette smoke and he generally appears unkept. Nichols's sister and mother testified to seeing a number of unexplained bruises on the child. A social worker determined that the child had an adjustment disorder, which was probably caused by the child being spanked with a belt. Because this evidence is legally sufficient to show a material and substantial change in the circumstances of the child,[6] the legal sufficiency challenge in Bruno's sixth point of error is overruled.
Bruno's seventh point of error challenges the legal sufficiency of the evidence showing that the prior order was unworkable or inappropriate under the circumstances. Nichols stated that since their divorce, Bruno has moved five or six times without giving her notice of the move or a new phone number. Nichols has thus had to obtain Bruno's new phone number from his grandmother. Nichols further testified that she tries to call the child on a weekly basis, but no one answers at Bruno's house and she is not able to leave a message because the answering machine is not on. According to Nichols, it can take up to four days to get through to someone at Bruno's house. Nichols also claims that Bruno makes it difficult for her to exercise her visitation. Because this is legally sufficient evidence that the prior order is unworkable and inappropriate under the circumstances, the legal sufficiency challenge in Bruno's seventh point of error is overruled.
Bruno's eighth and ninth points of error challenge the legal sufficiency of the evidence to show that the modification would be a positive improvement for, and in the best interest of, the child. As previously noted, Nichols presented evidence that the child has received unexplained bruises, is afraid of punishment, and after being with Bruno, is dirty and unkempt. Moreover, Nichols testified that since returning from Korea, she has lived in the same home where the child has his own room. Finally, the social worker testified that Nichols and the child have a good relationship and that the child would prefer to live at his mother's house because it is a safe place. In that this is legally sufficient evidence that a modification of conservatorship would be positive improvement and in the best interest of the child, Bruno's eighth and ninth points of error are overruled to that extent.

Exclusion of Evidence
Bruno's second through fifth points of error challenge the trial court's decisions to exclude evidence he offered as a discovery sanction and to deny his motion for continuance because he demonstrated good cause for admission of the evidence and should have been allowed additional time to respond to the discovery as a lesser sanction.
Former Rule 215(5) of the Texas Rules of Civil Procedure provides:
A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and must be shown in the record.
TEX. R. CIV. P. 215(5), 733-34 S.W.2d (Tex. Cases) LXIV (1987, amended 1998). The Texas Supreme Court described the operation *624 of former rule 215(5) in the following terms:
The salutary purpose of Rule 215(5) is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. The rule is mandatory, and its sole sanctionexclusion of evidenceis automatic, unless there is good cause to excuse its imposition. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause.
We have repeatedly addressed what factors, standing alone, are not in themselves good cause. Included among these are inadvertence of counsel, lack of surprise, and uniqueness of the excluded evidence....
* * * *
The difficulty with the rule lies not so much in the requirement of strict adherence, but in the severity of the sanction it imposes for every breach. The consequences of the rule should not be harsher in any case than the vice the rule seeks to correct. The sole sanction should not be the exclusion of all evidence not properly identified in discovery; rather, as with other failures to comply with discovery, the trial court should have a range of sanctions available to it to enforce the rules without injustice. "The punishment should fit the crime."

* * * *
We note, however, that the trial courts are not without power to prevent the enforcement of Rule 215(5) from operating as an injustice in a particular case. When a party has failed to timely identify evidence in response to discovery requests, the trial court has the discretion to postpone the trial and, under Rule 215(3), to impose an appropriate sanction upon the offending party for abuse of the discovery process. Such sanction may be used to compensate the non-offending party for any wasted expense in preparing for trial. Although the trial court should not allow delay to prejudice the non-offending party, the trial court should ordinarily be able to cure any prejudice by a just imposition of sanctions.
Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 914-16 (Tex.1992) (citations omitted) (emphasis added). Because a trial court has discretion to determine whether the offering party has established good cause, we may overturn a trial court's decision to exclude such evidence only upon a finding of abuse of discretion. See Mentis v. Barnard, 870 S.W.2d 14, 16 (Tex.1994).
However, in determining issues regarding the conservatorship of, possession of, and access to a child, the court's primary consideration is always the best interest of the child. See TEX. FAM.CODE ANN. § 153.002 (Vernon 1996). Compared to the best interest of the child, technical rules of pleading and practice are of little importance in determining child custody issues. See Leithold v. Plass, 413 S.W.2d 698, 701 (Tex.1967); Cohen v. Sims, 830 S.W.2d 285, 288 (Tex.App.-Houston [14 th Dist.] 1992, writ denied). This is also true with regard to rule 215 discovery sanctions. See Saxton v. Daggett, 864 S.W.2d 729, 735 (Tex.App.-Houston [1st Dist.] 1993, no writ). Moreover, courts have recognized that the exclusion of essential evidence, like the striking of pleadings, can equate to a death penalty sanction, and should not be used without considering whether lesser sanctions are adequate to accomplish the needed compliance, deterrence and punishment. See In re Striegler, 915 S.W.2d 629, 643 (Tex.App.-Amarillo 1996, writ denied).
We believe that the best interest of a child can only be attained when a *625 court's decision is as well-informed as the circumstances allow. A decision on custody, possession, or access can rarely be well-informed without consideration of the evidence and perspectives of both parents. Because the exclusion of any important evidence as a discovery sanction can only produce a less-informed decision, contrary to the best interest of the child, we believe that it should be resorted to only where lesser sanctions are either impracticable or have been attempted and proven unsuccessful.
In this case, the evidence contained in Bruno's bill of exceptions at trial included the testimony of a court appointed psychologist that: (a) Bruno's use of corporal punishment was not excessive; (b) it would be in the child's best interest to remain with Bruno; and (c) it would not be a positive improvement for the child to change custody. Similarly, Bruno's grandmother and sister testified that they had not seen any bruises on the child, other than those ordinarily found on a young child, as a result of Bruno's treatment of the child. Friends of Bruno and his new wife testified that not only had they not seen any bruises on the child or that he looked unkept and dirty, but also that the child lived in a loving home and was happy and well-behaved. In addition, the child's teacher testified that he is a good student. She also stated that it was her duty as a teacher to report any abuse but that she had not seen anything which would cause her to suspect that the child was subject to any abuse.
This evidence is material to a determination of conservatorship and is not cumulative of Nichols's evidence but instead directly controverts it. Because we do not believe that a decision on conservatorship could be well-informed, and thus in the best interest of the child, without consideration of the excluded evidence, we conclude that the trial court abused its discretion in excluding Bruno's evidence without first attempting a lesser sanction that could ultimately allow Bruno's evidence to be presented. Moreover, because we have concluded that the evidence is controlling on a material issue and is not cumulative, it mandates reversal. See Mentis, 870 S.W.2d at 16; see also TEX. R.App. P. 44.1(a). We therefore sustain Bruno's second point of error, reverse the judgment of the trial court, and remand the case for further proceedings.
NOTES
[1] Nichols's attorney, Braneff, testified that no objection was needed at the first trial because none of the items objected to at the second trial had been offered into evidence at the first trial.
[2] Although our sustaining of Bruno's second point of error in the following section will result in reversal and remand of the case, we must consider the sixth through ninth points, calling for a rendition of judgment, before ordering a remand. See Lone Star Gas Co. v. Railroad Comm'n of Texas, 767 S.W.2d 709, 710 (Tex. 1989).
[3] See Wood v. O'Donnell, 894 S.W.2d 555, 556 (Tex.App.-Fort Worth 1995, no writ); Thompson v. Thompson, 827 S.W.2d 563, 566 (Tex. App.-Corpus Christi 1992, writ denied).
[4] At the time of the divorce, Bruno and the child lived with Bruno's grandparents in Odessa and resided with them until May of 1993, when they moved into their own home. In May of 1994, Bruno and the child moved to College Station where Bruno attended Texas A & M University. In September of 1994, Bruno remarried. In May of 1996, Bruno graduated and moved back to Odessa with his new wife and the child. After returning to Odessa, the Brunos lived at more than one residence.
[5] See Ramos v. Ramos, 683 S.W.2d 84, 86 (Tex.App.-San Antonio 1984, no writ) (finding that the facts that the father had remarried, his new wife was pregnant, and they had moved into a new house were neither material nor substantial changes); Belford v. Belford, 682 S.W.2d 675, 676 (Tex.App.-Austin 1984, no writ) (stating that remarriage of both parties and mother's living in another state did not constitute a material and substantial change); Files v. Thomasson, 578 S.W.2d 883, 884-85 (Tex.Civ.App.-Houston [14 th Dist.] 1979, no writ) (concluding that the facts that appellee had remarried, his new wife was pregnant, and they had rented and moved into the appellee's parent's house are neither material nor substantial changes "absent a showing of a relationship of such developments to the welfare of the children."); Heiskell v. Heiskell, 412 S.W.2d 774, 776 (Tex.Civ. App.-Amarillo 1967, no writ) (finding that the facts that the plaintiff had remarried and had a home for the child were not sufficient to establish a material and substantial change).
[6] See L.P.W. v. S.O., 669 S.W.2d 182, 184-85 (Tex.App.-Fort Worth 1984, no writ) (finding that the emotional distress of the child may be considered a material and substantial change).