# NO. 12-08-00231-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
|  | § | *COUNTY COURT AT LAW* |
| *M.A.F., A CHILD* | § | *RUSK COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Stephen Freeman appeals the trial court's order modifying the parent-child relationship. Stephen presents four issues. We reverse and render in part, modify in part, and affirm as modified in part.

## BACKGROUND

Stephen and Amber Freeman were divorced on March 19, 2003 and are the parents of M.A.F., born April 18, 2000. In the divorce decree, the trial court appointed Stephen and Amber joint managing conservators of M.A.F. Amber was granted the exclusive right to establish the child's primary residence within Rusk County, Texas, and all contiguous counties. The trial court ordered that Stephen have possession of M.A.F. every other weekend beginning Friday afternoon and ending at 7:30 p.m. the following Sunday. During weeks in which Stephen was entitled to a weekend period of possession, he had possession of M.A.F. from Monday afternoon until Tuesday morning, and again from Wednesday afternoon until Thursday morning. During weeks in which Stephen was not entitled to a weekend period of possession, he had possession of M.A.F. from Tuesday afternoon until Wednesday morning, and again from Thursday afternoon until Friday morning. Further, Stephen was ordered to pay child support to Amber. On June 25, 2004, the trial court signed an order (the "2004 order") to modify the parent-child relationship. Pursuant to a mediated settlement agreement, the trial court ordered that Stephen's weekend

visitation be extended to allow him to return M.A.F. on Monday morning at either the day care facility or school where the child was currently enrolled.

On November 16, 2005, Stephen filed a petition to modify the parent-child relationship stating that the order to be modified was the final decree of divorce rendered on March 19, 2003. He cited changed circumstances as the reason for the modification. Stephen requested that he be appointed the person with the right to designate M.A.F.'s primary residence and to receive child support.

In an affidavit attached to the petition to modify, Stephen stated that the facts in the affidavit were within his personal knowledge and were true and correct. His affidavit included several allegations against Amber including that she was mentally and emotionally unstable, and was abusing alcohol and prescription drugs to the point of passing out in her residence while she had possession of the child. He also stated that Amber had violated the trial court's order regarding persons of the opposite sex. In conjunction with his petition to modify, Stephen also requested enforcement of the terms of possession and order to appear, alleging that Amber had failed to comply with the terms of the permanent injunction contained in the decree of divorce regarding overnight adult guests of the opposite sex.

On June 20, 2006, Amber filed a counter petition to modify the parent-child relationship, alleging changed circumstances since the date of the signing of the mediated settlement agreement on which the 2004 order was based, and that the modification was in the child's best interest. She requested that Stephen's periods of possession be modified and limited to conform to a standard possession order, and that the support payments previously ordered should be increased. She also requested attorney's fees, costs, and expenses. On October 22, 2007, Stephen nonsuited all of his claims for affirmative relief. In the affidavit attached to the nonsuit, he stated that the previous affidavit was executed in good faith, but that he realized the information upon which it was based was incorrect. He "recanted" the statements in his previous affidavit.

On November 13, 2007, the trial court held a hearing on Amber's petition to modify. During the hearing, Amber elected not to pursue her claim to increase or modify child support. On March 5, 2008, the trial court signed an order to modify, finding that Stephen's initial suit was without merit; that the material allegations in Amber's counter petition were true; that the circumstances of the child, a conservator, or other party affected by the order had materially and

substantially changed; and that modification was in the best interest of the child. The trial court appointed Amber and Stephen as joint managing conservators of the child with Amber having the exclusive right to designate M.A.F.'s primary residence. Stephen was given possession of the child pursuant to a standard possession order. Because the trial court found that Stephen's initial suit was without merit, it also found good cause existed to award Amber attorney's fees, expenses, and costs in the amount of $12,287.00. The trial court found that Amber's attorney's fees and costs were incurred in connection with the initial suit and were in the nature of child support.

Stephen filed a motion for new trial and, after a hearing, the trial court denied his motion. The trial court also filed findings of facts and conclusions of law. This appeal followed.

## MODIFICATION

In his first issue, Stephen contends that the trial court abused its discretion in modifying his visitation because the evidence was legally and factually insufficient to support Amber's allegations of changed circumstances.

### Standard of Review

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex. App.–Houston [1st Dist.] 2002, pet. denied). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). However, when an appellate record contains a reporter's record, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the finding. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). We review the trial court's conclusions of law de novo. *Id.* The standard of review for conclusions of law is whether they are correct. *Id.* We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Id.* Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.* A trial court's modification of conservatorship is reviewed for abuse of discretion. *In re P.M.B.*, 2 S.W.3d 618, 621 (Tex. App.–Houston [14th Dist.] 1999, no pet.). It is an abuse of discretion for a trial court to rule without supporting evidence. *Id.* Under an abuse of discretion standard, the

legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant facts in assessing whether the trial court abused its discretion. *In re Ferguson*, 927 S.W.2d 766, 769 (Tex. App.–Texarkana 1996, no writ). In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court. *Id.*

## Applicable Law

The best interest of the child is the primary consideration in determining conservatorship or residency of a minor child. *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.–San Antonio 1995, no writ). According to section 156.101 of the Texas Family Code, the trial court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child. TEX. FAM. CODE ANN. § 156.101 (Vernon 2008). However, the court must conclude that modification would be in the best interest of the child and that the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of the date of the rendition of the order or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. TEX. FAM. CODE ANN. § 156.101.

Whether there has been a material and substantial change of circumstances affecting the child is normally to be determined by an examination of the evidence of changed circumstances occurring between the date of the order or judgment sought to be modified and the date of the filing of the motion to modify. *Gibbs v. Greenwood*, 651 S.W.2d 377, 379 (Tex. App.–Austin 1983, no writ). The moving party must show what material changes have occurred in the intervening period and the record must contain both historical and current evidence of the relevant circumstances. *Zeifman v. Michels*, 212 S.W.3d 582, 589, 594 n.1 (Tex. App.–Austin 2006, pet. denied). Without both sets of data, the court has nothing to compare and cannot determine whether a change has occurred. *Id.* at 594 n.1.

A court's determination as to whether a material and substantial change of circumstances has occurred is not guided by rigid rules and is fact specific. *Id.* at 593. Further, the policy behind the requirement of a material and substantial change is to prevent constant relitigation with respect to children and to attempt to create stability in the conservatorship. *Id.* at 595. If a circumstance was contemplated at the time of an original agreement, its eventuality is not a changed circumstance, but instead an anticipated circumstance that cannot be evidence of a

material or substantial change of circumstances. *See **Hoffman v. Hoffman***, No. 03-03-00062-CV, 2003 WL 22669032, at \*6 (Tex. App.–Austin Nov. 13, 2003, no pet.) (mem. op.). Change in the age of a child may constitute a material change, but an increase in age alone is not a changed circumstance to justify modification unless changed needs are shown. ***Zeifman***, 212 S.W.3d at 593. Courts have consistently required that a change be proved and that it be shown to be material and substantial. *See e.g., **id.*** at 594-95 (finding no change in circumstances because the child's change of age and school were contemplated by an agreement between the parties); ***Hoffman***, 2003 WL 22669032, at \*6 (finding no change because the mother's move was anticipated by the parties).

## Findings of Fact and Conclusions of Law

In its findings of fact, the trial court found as follows:

1. That the material allegations in Amber's petition to modify filed on June 20, 2006 are true and correct.

2. That the circumstances of the child, a conservator, or person affected by the order sought to be modified have materially and substantially changed since the order was rendered.

3. That it is in M.A.F.'s best interest that Amber and Stephen be appointed joint managing conservators, and that Amber have the exclusive right to designate M.A.F.'s primary residence.

4. That the modification order rendered in this cause is in M.A.F.'s best interest.

5. That the periods of possession [should] comply with the standard possession order.

6. That Stephen's petition to modify the parent-child relationship filed on November 16, 2005 was without merit and was filed frivolously or was designed to harass Amber.

7. That the amount of $12,287.00, representing Amber's attorney's fees and costs in connection with her defense against Stephen's suit, is fair, reasonable, and necessary, and was incurred in relation to the child and in the nature of child support.

8. That any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

In its conclusions of law, the trial court concluded as follows:

1. Amber and Stephen should be named joint managing conservators of M.A.F. with the rights and duties stated in the judgment, and Amber should be named as the conservator with the right to designate M.A.F.'s primary residence.

2. Stephen is entitled to periods of possession with M.A.F. pursuant to the standard possession order as outlined in the judgment.

3. The attorney's fees and costs incurred by Amber in defense of the petition to modify filed by Stephen on November 16, 2005 are taxed as costs against Stephen as stated in the judgment.

**Analysis**

At trial, Amber contended that there were material and substantial changes in the circumstances affecting the child that warranted modification of the 2004 order. After reviewing the evidence, we note that Amber's contentions focused on alleged changes in four areas.

*Travel required by visitation schedule.* Amber stated that she did not want M.A.F. to be a "suitcase kid," going from one house to the next every other day. Amber stated that M.A.F. does not refer to things as being her own, and that she wants M.A.F. to have a home in one place where she can sit down during the week and do her homework and activities. According to Amber, she and Stephen live in separate towns, and it is approximately forty-five minutes from Stephen's residence to M.A.F.'s school. She did not like the idea of her child being on the road every other day and explained that it was a safety issue for her. Amber believes it puts a huge strain on M.A.F. going back and forth, and being in a divorced family. However, she admitted that at the time of the 2004 order, she knew M.A.F. was going to get older, that she would be going to school, and that she would be living with divorced parents. Further, at the time of the 2004 order, Amber admitted that the travel issue existed, that she was living in Longview, and that she knew Stephen would have to travel to and from Henderson.

Because the travel issue existed at the time of the 2004 order and Amber anticipated that M.A.F. would get older and be in school, the travel schedule is not a changed circumstance. Instead, it is an anticipated circumstance that cannot be evidence of a material and substantial change of circumstances. *See **Hoffman***, 2003 WL 22669032, at *6.

*M.A.F.'s activities.* Amber stated that it took "tooth and nail" to get M.A.F. enrolled in gymnastics because Amber and Stephen fought about it. According to Amber, M.A.F. has skipped weekly gymnastics practices several times during the summer months because Stephen forgot or did not manage to go to Longview. Amber believed that under a standard possession order, she would be better able to get M.A.F. to gymnastics practice during the week. Amber stated that M.A.F. was missing out on things and that she did not want their poor decisions to hurt M.A.F. Amber stated that M.A.F. was a little girl "coming into her own," and that she wanted to experience activities with friends. Amber testified that these issues were not a problem at the time she agreed to the 2004 order.

Amber also mentioned soccer as a possible extracurricular activity for M.A.F. However, Amber admitted that she never asked Stephen to put M.A.F. in soccer. According to Stephen, he

first heard about M.A.F. participating in soccer at Amber's deposition. Before that date, Amber had never requested that M.A.F. participate in soccer, nor had he heard M.A.F. say that she wanted to play soccer. He thought that it was understood, verbally at least, that he would honor whatever extracurricular activities M.A.F. had or would have.

In sum, Amber complained that Stephen sometimes forgot about or did not get M.A.F. to gymnastics practice in the summer. However, she did not elaborate on how often M.A.F. missed practices or whether Stephen habitually forgot or refused to take M.A.F. to gymnastics. *See Fair v. Davis*, 787 S.W.2d 422, 429-30 (Tex. App.—Dallas 1990, no writ) (finding some evidence to support eliminating Wednesday visitation because children increased in age, began to be involved in piano and gymnastics, Father had on some occasions refused to take children to activities because he decided Mother had not made good faith effort to schedule activities at different times, and Father would not let children practice piano during his visitation). She also stated that M.A.F. wanted to experience activities with friends, but did not indicate what these activities were, how the visitation schedule prevented M.A.F. from participating in these activities, or how this was a changed circumstance. *See In re K.T.W.*, No. 05-08-01416-CV, 2010 WL 716417, at *3 (Tex. App.—Dallas Mar. 3, 2010, no pet.) (mem. op.) (no evidence of material and substantial change where complaint related to only one extracurricular activity and activity had been rearranged to accommodate visitation; no other evidence relating to any other scheduling conflicts or difficulties). Thus, Amber's testimony is not evidence of a material and substantial change of circumstances. *See Zeifman*, 212 S.W.3d at 594-95.

*Stephen's inflexibility.* Amber acknowledged that she testified in her deposition that she and Stephen had made the best of the visitation schedule over the past four years, and that they had worked well together for the most part. She stated that before Stephen filed his petition to modify on November 16, 2005, they communicated very well. Amber described the tone of the emails they exchanged as "being very polite." Amber initially stated that after Stephen filed suit, he became inflexible. She later stated that he did not become inflexible until after she divorced a former husband in August 2005. Amber testified further that she and Stephen were at the point where they were not communicating. Amber's former husband confirmed that during his marriage to Amber from 2004 to 2005, Stephen was constantly in a dispute with Amber. In a 2007 report, a licensed professional counselor stated that Amber told him she was concerned

about their inability to make decisions together and that she could not put M.A.F. in gymnastics for nearly a year because Stephen did not want to sacrifice any time with M.A.F.

Amber admitted at trial, however, that in recent months, Stephen had become more flexible regarding M.A.F.'s schedule. Amber's concern was that she did not believe Stephen would continue to be flexible and thought he would "go right back to the way things were." She stated that the current possession schedule would work only if she and Stephen work well together. From this testimony it appears that Amber's only complaint related to Stephen's possible future behavior. This is not evidence of a material and substantial change of circumstances. *See Zeifman*, 212 S.W.3d at 594-95.

*Safety concerns.* According to Amber, Stephen bought M.A.F. a four wheeler and M.A.F. told her Stephen had allowed her to ride it without proper head gear. Amber introduced two pictures at trial showing M.A.F. riding a four wheeler. In one picture, she was wearing a bicycle helmet, and in the other, she was wearing a dirt bike helmet. Amber objected to M.A.F.'s riding a four wheeler without proper equipment because she was "scared to death [M.A.F. was] going to have an accident and get hurt." Stephen admitted that M.A.F. rode an adult four wheeler once without a helmet. He stated that M.A.F. used a bicycle helmet immediately after he purchased the four wheeler. Stephen maintained that otherwise M.A.F. had always worn a dirt bike helmet while riding her four wheeler. He stated that M.A.F. rode her four wheeler at a camp house and had never been unsupervised. A family friend stated that M.A.F. rode her four wheeler at her mother's camp house, and none of the children were unsupervised. The counselor reported that M.A.F. told him she received a four wheeler from Stephen and that even though she had a helmet, she did not wear it.

Amber also complained that Stephen allowed M.A.F. to shoot a machine gun. Stephen admitted that he owned a fully automatic .22 caliber machine gun. He allowed M.A.F. to fire it once at the East Texas Rifle and Pistol Club while she was sitting in his lap and wearing ear protection. According to the family friend, M.A.F. and her daughter shot machine guns while their fathers held the guns. However, Amber admitted that she was not requesting that the trial court suspend Stephen's possession or charge him with negligent supervision in connection with either the four wheeler or the machine gun.

Even though it may be troubling that Stephen allowed M.A.F. to ride a four wheeler without a helmet and to shoot a machine gun, the evidence relating to these matters does not rise to the level necessary to show a material and substantial change of circumstances. *See id*.

## Conclusion

From this evidence and the record as a whole, the trial court could not have reasonably concluded that the travel required by the visitation schedule, M.A.F.'s activities, Stephen's alleged inflexibility, and Amber's safety concerns constituted a material and substantial change of circumstances since the 2004 order. *See Gibbs*, 651 S.W.2d at 379. Therefore, the trial court abused its discretion in finding that the material allegations in Amber's petition to modify were true. Because we have determined that the trial court abused its discretion in finding a material and substantial change of circumstances, it is unnecessary for us to determine whether modification would be in M.A.F.'s best interest. *See* TEX. FAM. CODE ANN. § 156.101. Accordingly, we sustain Stephen's first issue.

### FRIVOLOUS FINDING

In his third issue, Stephen contends that the trial court abused its discretion in finding that his modification suit was filed frivolously and designed to harass Amber, and in awarding attorney's fees, because there was no evidence to support the finding. He also argues that the amount awarded to Amber is incorrect. Amber disagrees.

## Applicable Law

If a trial court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall tax attorney's fees as costs against the offending party. TEX. FAM. CODE ANN. § 156.005 (Vernon 2008). The standard of review on appeal is abuse of discretion. *Warchol v. Warchol*, 853 S.W.2d 165, 169 (Tex. App.–Beaumont 1993, no writ).

## Finding of Frivolous Filing

The trial court determined that Stephen's petition to modify the parent-child relationship filed on November 16, 2005 was without merit and was filed frivolously or was designed to harass Amber. Amber testified that shortly before Stephen filed his petition to modify, she ended a dating relationship with Richard Williams. Afterwards, Williams began harassing her, making unwanted telephone calls and leaving messages on the telephone. Amber testified that a message from Williams left on her answering machine and the allegations in Stephen's affidavit

were identical. She stated that when a temporary hearing had been scheduled on Stephen's petition to modify, she gave the recorded message from Williams to her attorney and authorized him to play it for Stephen's attorney. Amber's attorney testified that eighty percent of his time, court costs, and expenses were attributable to defending Amber against Stephen's petition to modify. He stated that Amber's attorney's fees and costs total $12,934.02, not including his time spent at trial and $800.00 incurred for the counselor's recent assessment.

Stephen stated that he filed the petition to modify based on information provided to him by Williams. He testified that Williams called him "out of the blue," introduced himself, and said that there were some things he needed to tell Stephen. Stephen was extremely concerned about Williams's allegations and requested that his attorney file a petition to modify. However, he never pursued the petition for emergency relief or tried to obtain temporary custody of M.A.F. Stephen testified that he and his attorney investigated Williams's assertions and ultimately discovered that Williams was apparently trying to get revenge on Amber because she ended their relationship. Stephen testified that he no longer believed Amber was a junkie, a negligent parent, or mentally unstable. He also stated that Williams's being charged and convicted for harassment caused him not to believe Williams's assertions. However, he knew that Amber filed a complaint against Williams either the day that he filed his petition to modify or the day after.

Stephen admitted that even after he learned of Williams's motives, he developed various theories, took depositions, and propounded discovery. Stephen was aware that Amber's attorney had played the tape recording containing Williams's threats for his attorney. Although he could not recall, he did not disagree that this occurred about one year and ten months before trial. Stephen was asked why he waited a year and a half after finding out about the tape recording before nonsuiting his initial petition and revoking his affidavit. In response, he invoked the attorney-client privilege. He believed that Amber should pay the costs of defending his petition to modify because he filed it in good faith even though he agreed that she had to defend herself against these allegations. Stephen knew that his petition to modify was based upon incorrect assertions soon after he filed his petition to modify, but continued to pursue his suit for almost two years. Thus, the trial court did not abuse its discretion in determining that his suit for modification was filed frivolously or designed to harass Amber and awarding her attorney's fees and costs. *See* TEX. FAM. CODE ANN. § 156.005; *Warchol*, 853 S.W.2d at 169.

**Attorney's Fees**

Stephen also complains that the trial court abused its discretion in determining the amount of attorney's fees, arguing that Amber's attorney testified that the attorney's fees and costs totaled $12,934.00. In its letter ruling before signing the order to modify, the trial court found that the amount that should be awarded to Amber for attorney's fees and costs was eighty percent of $15,359.00, or $12,287.00. Amber's attorney testified that his fees and costs totaled $12,934.02, but that this amount did not include his time spent at trial or an additional $800.00 incurred for the counselor's recent assessment. The record is silent regarding how the trial court determined that Amber's attorney's fees and costs totaled $15,359.00. However, Stephen failed to object to the amount of attorney's fees and costs after the letter ruling.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). Because Stephen did not object to the amount of the attorney's fees and costs awarded to Amber, he has waived this argument.

**Conclusion**

For the foregoing reasons, we overrule Stephen's third issue.


**ATTORNEY'S FEES AS CHILD SUPPORT**

In his fourth issue, Stephen argues that the trial court improperly characterized the award of attorney's fees against him as being incurred in relation to the child and in the nature of child support. Amber contends that both of their petitions to modify sought a modification of child support. The trial court stated that the amount of $12,287.00, representing Amber's attorney's fees and costs in connection with her defense against Stephen's suit, is fair, reasonable, and necessary, and was incurred in relation to the child and in the nature of child support. We review the trial court's conclusion of law de novo. *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.– Houston [1st Dist.] 2003, no pet.). Attorney's fees and costs may not be taxed or characterized as child support when they are incurred in a suit brought to modify the parent-child relationship that does not involve the enforcement of a child support obligation. *Id.*; *see also Finley v. May*, 154 S.W.3d 196, 199 (Tex. App.–Austin 2004, no pet.).

Here, neither Stephen's nor Amber's petition to modify alleged enforcement of a child support obligation. In fact, Stephen's petition requesting a change in child support was nonsuited, and at trial, Amber elected not to pursue her claim to increase or modify child support. Because neither petition to modify the parent-child relationship involved enforcement of a child support obligation, the trial court erred in characterizing the attorney's fees and costs awarded to Amber as child support. Accordingly, we sustain Stephen's fourth issue.

## CONCLUSION

The trial court abused its discretion in finding that the material allegations in Amber's petition to modify were true. The trial court did not err in finding that Stephen's modification suit was filed frivolously and designed to harass Amber, or in awarding attorney's fees and costs to Amber. The trial court erred, however, in characterizing the attorney's fees and costs awarded to Amber as child support.

Accordingly, we *reverse* the portion of the trial court's March 5, 2008 order granting Amber's petition to modify and *render* judgment denying the petition. We *modify* the trial court's March 5, 2008 order by *deleting* the beginning of the third sentence in the section entitled "Attorney's and Ad Litem Fees" as follows:

> IT IS ORDERED that the attorney's fees, expenses, and costs, which were incurred in relation to the child, are in the nature of child support, and . . . .

As *modified*, we *affirm* the trial court's March 5, 2008 order as to the award of attorney's fees and costs to Amber. Because we have sustained Stephen's first issue, we need not address his second issue regarding extended visitation provisions. *See* TEX. R. APP. P. 47.1.

SAM GRIFFITH
Justice

Opinion delivered May 28, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)