911 S.W.2d 411 (1995)
Hector VILLASENOR, Appellant/Appellee,
v.
Teresa VILLASENOR, Appellee/Appellant.
No. 04-95-00007-CV.
Court of Appeals of Texas, San Antonio.
August 16, 1995.
Rehearing Overruled September 8, 1995.
*414 Sam C. Bashara, Law Offices of Sam C. Bashara, P.C., San Antonio, for appellant.
Martha Fitzwater, Austin, for appellee.
Before CHAPA, C.J., and RICKHOFF and STONE, JJ.

OPINION
RICKHOFF, Justice.
This appeal joins post-divorce torts with counter-motions in a suit seeking to modify the parent-child relationship. In eleven points of error, Teresa Villaseñor challenges the sufficiency of the evidence supporting the findings of intentional infliction of emotional distress, slander, residency of the children, and attorney's fees. In nine cross points, Hector Villaseñor challenges the child support award. We affirm in part and reverse in part.

Procedural Summary
Teresa and Hector, the parents of two sons and a daughter, were divorced on April 16, 1992. On February 18, 1994, Teresa sought modification of the support, visitation, and domicile provisions of the divorce decree. Hector counterclaimed for modification and additionally alleged slander and intentional infliction of emotional distress.
The court designated Bexar County as the residence of the children; ordered Hector to pay $4,000 per month in child support; adjudged *415 $10,000 against Teresa for slander and $30,000 for intentional infliction of emotional distress; and ordered Teresa to pay Hector's attorney's fees. The court did not order Teresa to pay child support for Elena, the eldest child who remained in Hector's custody.

Hector's Tort Claims
Teresa's first six points of error address the sufficiency of the evidence supporting the trial court's findings on Hector's tort claims of intentional infliction of emotional distress and slander.
1. Standard of Review
In reviewing a challenge to the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. Behringer v. Behringer, 884 S.W.2d 839, 841 (Tex.App.Fort Worth 1994, writ denied). If there is more than a scintilla of evidence to support the finding, the no evidence point of error must be overruled. LaCoure v. LaCoure, 820 S.W.2d 228, 232 (Tex.App.El Paso 1991, writ denied).
In reviewing a challenge to the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. at 232-33. The appellate court cannot substitute its opinion for that of the trier of fact and determine that it would reach a different conclusion. Glockzin v. Rhea, 760 S.W.2d 665, 666 (Tex.App.Houston [1st Dist.] 1988, writ denied).
2. Intentional Infliction of Emotional Distress
In her first through third points of error, Teresa contends there is legally and factually insufficient evidence to support the trial court's finding of intentional infliction of emotional distress and its corresponding damage award. In its findings of fact, the court found that Teresa had recklessly and intentionally engaged in a pattern of conduct that caused Hector severe emotional distress. The court also found that Hector's damages were $30,000.
To prove intentional infliction of emotional distress, the plaintiff must demonstrate: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional stress; and (4) the plaintiff's emotional stress was severe or extreme. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex.1993); Tidelands Auto. Club v. Walters, 699 S.W.2d 939, 942 (Tex.App. Beaumont 1985, writ ref'd n.r.e.) (adopting RESTATEMENT (SECOND) of Torts § 46 (1965)). Teresa specifically challenges the second and fourth elements: whether her conduct was extreme and outrageous and whether Hector suffered severe or extreme emotional distress. Because we find the issue of distress dispositive, we do not address the outrageousness of Teresa's conduct.[2]
a. Factual Background
The evidence supports the following incidents relied upon by Hector to prove intentional infliction of emotional distress:
1. Teresa, while on the phone with her then nine-year-old son Carlos, suggested he ask Hector's wife Tammy about Daniel Prado and Nicole Prado, Tammy's *416 former husband and deceased daughter.
2. Teresa left a message on the answering machine of Tammy's sixteen-year-old daughter claiming that Hector had admitted several affairs with other women and had placed Tammy at risk of contracting acquired immunodeficiency syndrome (AIDS).[3]
3. Teresa denied Hector's court-ordered possession of Carlos on his eighth birthday.[4]
4. Teresa faxed a letter to Hector informing him that Carlos could not have a birthday party because Hector had insisted upon his court-ordered birthday visitation.
5. Teresa denied Hector access to his children on September 8, 1993.
6. Teresa blocked Hector's vehicle in her driveway and scratched it with her keys.
7. Teresa placed over 100 harassing phone calls to Hector's home after the divorce, including hang-up calls.
8. Teresa put the three children in the middle of disputes.
9. Teresa would "bad-mouth" Hector to the children.
10. Teresa taunted Hector with threats of taking his children to another city.
11. Teresa confronted Tammy and the children at Fiesta Texas, called Tammy a "bitch" and accused the children of stealing their park passes.
12. Teresa refused to let the children play sports.
13. Teresa called the children at Hector's house during his visitation with the children.
14. Teresa did not allow the children to go to the Alamodome with Hector on August 7, 1993.
To this list Teresa's brief adds several incidents:
1. Teresa faxed two messages to Hector (a) about his tardy return of the children after his visitation; and (b) that only Tammy had to worry about where he is sleeping.
2. Teresa failed to immediately give Hector the children's ski clothes he requested.
3. Teresa did not disclose the location of the children's savings bonds.
4. Teresa gave Hector only a few days' notice of his son's first communion.
b. Analysis
The tort of intentional infliction of emotional distress requires there be sufficient proof of severe emotional distress, in addition to any outrageous conduct on the defendant's part. Walters, 699 S.W.2d at 944. As evidence of his emotional distress, Hector refers to his statements that he loves his sons and daughter; they hunt, fish, and attend football games; and he helps with homework and coaches their teams. He said it "hurt" when Teresa put the children "in the middle of every situation."
He complained that "when I don't see my kids for a period of a week, it hurts." About the incident when Teresa scratched his car, Hector said, "It emotionally upsets me and hurts to have my child there seeing everything." When Teresa directed Carlos to ask Tammy about her former husband and deceased daughter, Hector felt "hurt" and "angry" because Tammy cried. About the ski clothes incident, Hector said, "It hurts me seeing my kids hurt and crying that they don't have clothes to go skiing. When I know, I paid for them myself." Hector testified that he cried after certain incidents; for example, when he was denied visitation on Carlos' eighth birthday.
Emotional distress includes all highly unpleasant mental reactions, such as fright, humiliation, embarrassment, anger, and worry. Behringer, 884 S.W.2d at 844. To be recoverable, the distress must be so severe *417 that no reasonable person should be expected to endure it. Washington v. Knight, 887 S.W.2d 211, 216 (Tex.App.Texarkana 1994, writ denied); Behringer, 884 S.W.2d at 844 (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. j (1965)). The plaintiff must prove that he suffered more than mere worry, anxiety, vexation, embarrassment, or anger. Regan v. Lee, 879 S.W.2d 133, 136 (Tex.App.Houston [14th Dist.] 1994, no writ).
Emotional distress was severe in Behringer, where the plaintiff feared for his life, slept with a pistol, cried in public, and lost his appetite. 884 S.W.2d at 844-45. Similarly, in Motsenbocker v. Potts, 863 S.W.2d 126, 135 (Tex.App.Dallas 1993, no writ), the plaintiff was so disturbed, uncomfortable, worried, and frightened that he considered suicide. In Walters, the plaintiff refused to speak or see anyone, became ill and disoriented, and experienced extreme anger. 699 S.W.2d at 945. In contrast, feelings of anger, depression, and humiliation (even when embarrassed in front of children), are insufficient evidence of severe distress, especially when suit is brought to punish the defendant. Regan, 879 S.W.2d at 136-37.
In this case, there is no evidence that Hector experienced nauseousness, loss of appetite, sleeplessness, depression, fear, or rage. Hector did not testify that his "hurt" interrupted his work or social interests. There is no evidence that Hector consulted professional help or suffered a pecuniary loss as a result of Teresa's actions. Furthermore, Hector cannot recover for the pain suffered by his children, his wife, or other third parties. See Cavanaugh v. Jones, 863 S.W.2d 551, 557 (Tex.App.Austin 1993, writ denied) (limiting bystander recovery); RESTATEMENT (SECOND) OF TORTS § 46, cmt. l (1965) (limiting third party recovery for intentional infliction of emotional distress). While we recognize that proof of physical injury is not required in order to recover for emotional distress, St. Elizabeth Hosp. v. Garrard, 730 S.W.2d 649, 654 (Tex.1987), we conclude that Hector offered no evidence of the severity of his pain nor did he demonstrate how the distress was unendurable. Thus, Hector did not prove the elements necessary for recovery of intentional infliction of emotional distress.
We sustain Teresa's first three points of error.
3. Slander Per Se
In her fourth through six points of error, Teresa contends there is legally and factually insufficient evidence to support the trial court's finding of slander and its corresponding damage award. In its findings of fact, the court found that Teresa had recklessly and intentionally made oral defamatory statements to third parties that were false and harmful to Hector and were slander per se. The court also found that the defamatory statements caused Hector $10,000 in damages.
a. Factual Background
Although the trial court's findings do not describe the remark or remarks it found slanderous, Hector concedes that his cause of action rests upon one telephone message. Teresa admitted leaving the following statement on the answering machine of Tammy's sixteen-year-old daughter, Danielle:[5]
Hey, Danielle, this is Teresa. I think you should have your ... instruct your Mom that in court, it came out that Dr. Villaseñor had several affairs with several nurses at Nix Hospital and I had to have a test for HIV. I think you should have your Mom tested just for your own protection and he has admitted to it, and if she doesn't believe it, to call me and it's in the court record that he's done it before and he'll do it again. So, your mom can have him, but, I'll tell you what, he played around on me, and he's going to play around on your Mom. He fucks whoever he wants. Have your Mom tested because I had to be tested, believe it or not. Bye.
(Emphasis added). Hector, a physician, admitted having two sexual encounters with nurses during his marriage to Teresa.
Hector maintains Teresa's message is slander per se because it falsely accuses him of sexual misconduct and of having a loathsome *418 disease and further importunes his business. Teresa concedes that her message was "distasteful" but truthful.
b. Analysis
Slander, to be actionable without proof of damage, falls into four categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; and (4) imputation of sexual misconduct. Kelly v. Diocese of Corpus Christi, 832 S.W.2d 88, 91 (Tex.App.Corpus Christi 1992, writ dism'd w.o.j.); Bolling v. Baker, 671 S.W.2d 559, 570 (Tex.App.San Antonio 1984, writ dism'd), cert. denied, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985); RESTATEMENT (SECOND) OF TORTS § 570 (1977). Whether the words are capable of a defamatory meaning is a question of law based upon how a person of ordinary intelligence would perceive the entire statement in light of the surrounding circumstances. Diaz v. Rankin, 777 S.W.2d 496, 498-99 (Tex.App.Corpus Christi 1989, no writ). An affirmative defense to a charge of defamation is that the statement is true. Tatum v. Liner, 749 S.W.2d 251, 256 (Tex. App.San Antonio 1988, no writ).
Adultery is not a crime; therefore, there can be no slander per se based upon a noncriminal offense. Hector admits his adultery; thus, Teresa has proven her truth defense regarding slander per se in the sexual misconduct context.[6]
Furthermore, to be actionable on the loathsome disease basis, the allegedly slanderous words must claim a present infection. RESTATEMENT (SECOND) OF TORTS § 572, cmt. d (1977) (requiring more than exposure). Possible exposure to human immunodeficiency virus (HIV) does not necessarily raise the inference that one is infected with AIDS. Here, Teresa truthfully states that Hector engaged in high-risk activity; she did not say that Hector had AIDS or was HIV positive. She suggestsalbeit inappropriatelythat, like herself, Tammy should be tested for possible exposure to HIV. As a matter of law, we do not find Teresa's remark defamatory.
We recognize that a surgeon's career could be devastated by allegations that he had AIDS or was HIV positive. However, Teresa did not make those allegations. Additionally, if it is a defamatory attack on Hector's business to say he was intimate with nurses, then Teresa proved her truth defense by his admissions.
We sustain Teresa's fourth through sixth points of error.

Suit Affecting the Parent-Child Relationship
Teresa contests the trial court's findings on domicile and attorney's fees. Hector contests the court's child support award.
1. Children's Domicile
In her tenth and eleventh points of error, Teresa argues there is legally or factually insufficient evidence to support the court's restriction of the children's domicile to Bexar County.
a. Factual Background
The divorce decree permitted Teresa to designate the residence of the children in March 1995. She requested that the trial court accelerate this option to January 1995 to enable her to attend graduate school in Houston, Texas. By trial amendment, Hector asked the court to permanently designate Bexar County as the children's residence. This issue was limited to the residency of the two boys because Elena filed a designation naming her father as conservator.
Teresa testified that, given the acrimony of the parties, it would be in the best interest of the children to put distance between the adults. She indicated that she had family in Houston who would provide her and the children support. Hector testified that he was active in the boys' lives as a coach and academic mentor.
*419 b. Analysis
The best interest of the child is the primary consideration in determining conservatorship or residency of a minor child. Wood v. O'Donnell, 894 S.W.2d 555, 557 (Tex.App.Fort Worth 1995, no writ); TEX.FAM.CODE.ANN. § 14.07(a) (Vernon Supp. 1995). Trial courts have great discretion in determining the best interest of a child. Enriquez v. Krueck, 887 S.W.2d 497, 499 (Tex. App.San Antonio 1994, no writ). A court abuses its discretion if it acts arbitrarily or unreasonably. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990).
Hector argues that Teresa's proposed move was motivated by a desire to inflict emotional distress upon him. Teresa admitted that if she moved to Houston, Hector's access to the children would be limited but urged that, with his substantial income, he could fly to Houston from San Antonio.
If the court allowed the move, Hector and his sons would not continue to enjoy their close relationship. In addition, the children would be separated from their sister. We cannot say the trial court abused its discretion in naming Bexar County as the residency of the boys, Carlos and Andres.
According, we overrule Teresa's tenth and eleventh points of error.
2. Child Support
In nine grouped cross-points, Hector argues that the trial court erred in declining to order Teresa to pay child support for Elena, who remained in Hector's custody. Specifically, Hector contends the trial court abused its discretion because there is legally and factually insufficient evidence to support its findings that Teresa's annual income is $25,000 or that a variance from the Family Code is warranted. Hector complains that the trial court's award forces him to pay 100% of child support for all three children.
a. Factual Background
According to the evidence, the living expenses attributable to the two boys totalled $4,000 per month, and the expenses attributable to Elena totalled $2,000 per month. Based on Hector's annual gross income of $664,000, the trial court awarded Teresa $4,000 per month for support of the two boys.
The trial court found Hector's request for child support for Elena "proper" but "not appropriate" based on Hector's earnings, Teresa's earnings, and the needs and best interests of the three children. The court also stated that "ordering child support from Teresa Villaseñor to Hector Villaseñor would in essence reduce child support for Andres and Carlos." Finally, the trial court found that Teresa's resources had increased since the divorce and that her gross income, not including child support, was a minimum $25,000 per year plus income from her business.
b. Analysis
Each party has a duty to support his or her minor child. Ikard v. Ikard, 819 S.W.2d 644, 650 (Tex.App.El Paso 1991, no writ); TEX.FAM.CODE ANN. § 4.02 (Vernon 1993). In order to enforce this duty, the trial court possesses wide discretion to fix the amount of child support. In re J.M., 585 S.W.2d 854, 856 (Tex.Civ.App.San Antonio 1979, no writ); see also TEX.FAM.CODE ANN. § 14.052(b)(2) (Vernon Supp.1995). The court abuses its discretion if it acts arbitrarily or unreasonably. Worford, 801 S.W.2d at 109.
Although the duty of support is imposed equally between both parties, the court need not divide this obligation equally in terms of monetary contributions. Ulrich v. Ulrich, 652 S.W.2d 503, 504-05 (Tex. App.Houston [1st Dist.] 1983, no writ). The court may order either or both parents to make periodic or lump sum payments. Hourigan v. Hourigan, 635 S.W.2d 556, 558 (Tex.App.El Paso 1981, no writ). The relative value of non-monetary services of the parent and relative capabilities of the party should be considered. Ulrich, 652 S.W.2d at 505; Orsak v. Orsak, 642 S.W.2d 566, 567 (Tex.App.Dallas 1982, no writ) (finding no abuse of discretion where parents were not ordered to pay cross-support).
The conflicting evidence shows that Teresa's annual net income may be as low as $15,000 or as high as $68,657. Either figure *420 is significantly less than Hector's annual gross income of $664,000. We cannot say the trial court abused its discretion in making its findings regarding child support.
Accordingly, we overrule Hector's nine cross-points.
3. Attorney's Fees
In her seventh and eighth points of error, Teresa maintains there is legally and factually insufficient evidence to support the trial court's award of attorney's fees. In her ninth point of error, Teresa contends the trial court abused its discretion and violated public policy by awarding the fees. More particularly, she argues that attorney's fees are unfair, not properly segregated, and not conditioned upon appellate success.
a. Factual Background
Hector's trial counsel testified that his fee, based on $300 per hour, was $21,357.25. He stated that all fees requested were reasonable and necessary. On cross examination, trial counsel stated that his fees were based upon Title 2 of the Family Code. See TEX. FAM.CODE ANN. §§ 11.01-18.06 (Vernon 1986 & Supp.1995) (suits affecting the parent-child relationship).
The trial court found that $20,000 was a reasonable and necessary fee for legal services rendered through judgment. The trial court awarded an additional $10,000 for appeal to the court of appeals; $7,500 for filing a writ of error with the Texas Supreme Court; and $5,000 should the Texas Supreme Court grant writ of error. The court further found that all attorney's fees were "reasonable and necessary for services related to the protection of Hector Villaseñor and children's interest; none of the attorney[`s] fees awarded [were] related to services for the tort claims."
b. Analysis
The grant of attorney's fees in a domestic relations matter rests within the sound discretion of the trial court, and the trial court's order will not be disturbed absent an abuse of discretion. Kerckhoff v. Kerckhoff, 805 S.W.2d 937, 940 (Tex.App. San Antonio 1991, no writ). However, attorney's fees are not recoverable in tort actions. Huddleston v. Pace, 790 S.W.2d 47, 49 (Tex. App.San Antonio 1990, writ denied). Thus, attorney's fees attributable to separate causes of action must be segregated unless the claims arise from the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex.1991).
Regarding the award of trial fees, Teresa contends there is no evidence segregating the modification claims from the tort claims. Teresa waived this complaint by failing to object in open court to the lack of segregation or specifically raising it in her motion for new trial. See Roosth v. Roosth, 889 S.W.2d 445, 456-57 (Tex.App.Houston [14th Dist.] 1994, writ denied); Osoba v. Bassichis, 679 S.W.2d 119, 123 (Tex.App.Houston [14th Dist.] 1984, writ ref'd n.r.e.). Nonetheless, the evidence supports both the amount and the fact that it was limited to the modification. Even if the amount was not limited to the modification, many of the events raised to support the modification were also raised to support the torts and were therefore so intertwined proof of segregation was not required.
Regarding the award of appellate fees, the parties agree that such an award should be conditioned upon a successful appeal. See K.B. v. N.B., 811 S.W.2d 634, 641 (Tex.App.San Antonio 1991, writ denied), cert. denied, 504 U.S. 918, 112 S.Ct. 1963, 118 L.Ed.2d 564 (1992). However, if the party awarded attorney's fees is successful on appeal, then the trial court's omission of conditional language is not reversible error. Arena v. Arena, 822 S.W.2d 645, 651 (Tex. App.Fort Worth 1991, no writ).
The award of appellate attorney fees in this case is unconditional, but Hector was successful. Teresa prevailed on the tort claims but did not prevail in her only Title 2 challenge, that is, the children's domicile. We find no reversible error in the trial court's failure to condition the award of appellate attorney's fees.
*421 Finally, Teresa asserts that it is not in the children's best interest to award fees against her when Hector's income is so great. We find this argument without merit. If Teresa had not filed her action, no attorney fees would have been incurred.
We overrule Teresa's seventh and eighth points of error.

Conclusion
Because we sustain Teresa's first six points of error, we reverse the trial court's judgment on the issues of slander and intentional infliction of emotional distress. We overrule the remainder of Teresa's points of error and all of Hector's cross-points. We affirm those portions of the trial court's judgment addressing domicile, child support, and attorney's fees.
CHAPA, Chief Justice, concurring.
I concur with the results, but write to express respectfully my disagreement with the failure of the majority to find sufficient evidence that the conduct of Teresa Villaseñor was outrageous. Such a finding would perhaps discourage similar actions in the future by this appellee and others.
Intentional infliction of emotional distress requires proof that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional stress; and (4) the plaintiff's emotional stress was severe or extreme. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex.1993). "Outrageous conduct is that conduct which exceeds all reasonable bounds of decency. Whether behavior is `outrageous' is an issue of fact for the [factfinder] to decide." Massey v. Massey, 807 S.W.2d 391, 400 (Tex. App.Houston [1st Dist.] 1991), writ denied, 867 S.W.2d 766 (Tex.1993) (citation omitted). However, in order to comply with the fourth requirement of the standard, the courts insist on proof that the emotional stress upon the plaintiff be severe and extreme and more than mere worry, anxiety, vexation, embarrassment, or anger. Regan v. Lee, 879 S.W.2d 133, 136 (Tex.App.Houston [14th Dist.] 1994, no writ); Behringer v. Behringer, 884 S.W.2d 839, 844 (Tex.App.Fort Worth 1994, writ denied); Massey, 807 S.W.2d at 399-400; Motsenbocker v. Potts, 863 S.W.2d 126, 135 (Tex.App.Dallas 1993, no writ).
A review of this record reflects evidence of repetitive intentional, improper, and irritating activities by Teresa which were clearly calculated to bring grief and discomfort not only to Hector, but to his entire new family. In so doing, she simultaneously brought punishing stress upon her own children, who were innocent products of the voluntary choices made by both Teresa and Hector upon consummating their marriage. The actions of Teresa were outrageous by "exceed[ing] all reasonable bounds of decency" and cannot be condoned. See Massey, 807 S.W.2d at 400.
When parties make a conscious voluntary decision to marry each other, it is presumed that, being adults, they intelligently and maturely make such a decision. It is therefore ludicrous and dangerous that they later revert to childhood at the end of the marriage. This is particularly true when they have brought children into the world who, already burdened by the grief that stems from the breakup of the family unit, are forced to endure additional stress by the childish, immature actions of selfish parents. This cannot be encouraged or condoned no matter how justified a divorced parent believes the retaliation is deserved. However, no cause of action is before us dependent on severe emotional distress of the children or other innocent parties to this fiasco. See Cavanaugh v. Jones, 863 S.W.2d 551, 557 (Tex. App.Austin 1993, writ denied). The dispositive issue is whether Hector presented sufficient proof of extreme or severe emotional distress to himself as a result of the improper actions of Teresa. While Hector established he suffered some emotional distress, I must reluctantly agree with the majority that the proof presented by Hector did not arise to the level required by the courts to establish the last prong of an intentional infliction of emotional distress cause of action. I therefore concur with the results.
NOTES
[2] While we need not reach the issue of whether Teresa's behavior was outrageous, we note that "[t]he marital relationship is highly subjective and constituted by mutual understandings and interchanges which are constantly in flux." Massey v. Massey, 807 S.W.2d 391, 400 (Tex. App.Houston [1st Dist.] 1991), writ denied, 867 S.W.2d 766 (Tex.1993) (disapproving theory of negligent infliction of emotional distress). Behavior which some consider normal or forgivable, others would find outrageous. Id. For purposes of determining outrageous conduct, the insults, indignities, threats, annoyances, petty oppressions, or other trivialities associated with marriage and divorce must be considered upon the individual facts of each case. Compare Behringer, 884 S.W.2d at 842-44 (wife threatened to kill husband) with Massey, 807 S.W.2d at 399-400 (husband emotionally battered wife). See also Horton v. Montgomery Ward & Co., 827 S.W.2d 361, 369 (Tex.App.San Antonio 1992, writ denied) (demonstrating the difficulty of finding actions outrageous in the employment context).
[3] This incident also forms the basis of Hector's slander claim and will be discussed more fully below.
[4] Teresa argues that violations of court-ordered visitation were the basis of Hector's prior, successful motion for contempt. She did not present this argument to the trial court and has waived it on appeal.
[5] Apparently, Danielle was living with Hector and Tammy but had her own telephone line.
[6] If the statement is not false, then it cannot be slander per quod. See Reeves v. Western Co., 867 S.W.2d 385, 393 (Tex.App.San Antonio 1993, writ denied). Additionally, in this case there is no proof of special damages necessary for slander per quod. See Kelly, 832 S.W.2d at 91.