NUMBER 13-08-00536-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAUL LOZANO, Appellant,


v.


MARTHA LOZANO, Appellee.

 




On appeal from the County Court at Law


No. 5 of Hidalgo County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Garza



 This is an appeal from a denial of a motion for new trial in a divorce proceeding. By
four issues, appellant, Raul Lozano, contends that the trial court abused its discretion in
denying his motion for new trial because: (1) the division of the community estate was not
done in an equitable and just manner; (2) the calculation of child support and retroactive
child support was based on insufficient evidence and not done in accordance with the child
support guidelines contained in the family code, see Tex. Fam. Code Ann. §§ 154.001-.309
(Vernon 2008 & Supp. 2009); (3) he was improperly denied adequate visitation with the
couple's minor child; and (4) the denial of his oral motion for continuance was improper. 
We affirm.

I. Factual and Procedural Background

 Appellant and appellee, Martha Lozano, were married on January 30, 1993, and had
one child together (1); however, in May 2006, the parties stopped living together. Appellant,
a civilian contractor working in Afghanistan for the better part of nine years, filed an original
petition for divorce on May 31, 2006. Appellant later filed his first amended petition for
divorce on March 12, 2007. Appellee was subsequently served with notice of appellant's
first amended petition, and she filed her original answer and original counter-petition for
divorce.

 On July 20, 2007, appellee filed a "Motion For Docket Control Order," requesting
that the trial court set deadlines for discovery-related issues. On the same day, appellee
also filed a motion for mediation. The trial court, after a hearing, granted appellee's docket
control motion, set the case for trial on January 14, 2008, and set the following deadlines: 
(1) November 14, 2007 for the submission and completion of all responses to requests for
disclosure; and (2) all other discovery was to be completed thirty days prior to the final
hearing.

 Appellee served appellant with interrogatories and requests for production and
disclosure. Appellant made no objections to the discovery requests, and provided no
answers or information in response to appellee's requests. On November 5, 2007,
appellee filed motions to compel discovery and for sanctions, alleging that appellant had
not responded to her discovery requests. The trial court conducted a hearing on appellee's
motions at which neither appellant nor his trial counsel appeared. The trial court ordered
appellant to respond to appellee's discovery requests by December 10, 2007. (2) The trial
court also ordered appellant to pay the expenses of discovery, court costs, and $500 in
attorney's fees to appellee as sanctions.

 On November 29, 2007, appellant filed an unverified motion for rehearing, arguing
that the trial court's order granting appellee's motions to compel and for sanctions was
unwarranted because: (1) appellant's trial counsel, Joe Martinez, went to the wrong court;
and (2) appellant had a meritorious defense for failing to attend the hearing and participate
in discovery because he was stationed "in Afghanistan supporting U.S. troops." (3) In
response to appellant's motion for rehearing, appellee filed a motion for enforcement and
contempt and second motions to compel and for sanctions and had the motions set for a
hearing on January 14, 2008.

 Martinez filed a written motion for continuance on January 9, 2008, and a motion
to withdraw as counsel on January 16, 2008. The trial court granted Martinez's motion for
continuance and motion to withdraw as counsel. The case was reset, and the trial court
ordered appellant to respond to appellee's discovery requests. 

 Appellee later filed a motion urging the trial court to enter temporary orders
regarding child support and the parties' use of community property. A hearing on
appellee's motion for temporary orders was set for February 11, 2008. Prior to the hearing,
attorney Abel Hinojosa filed an appearance as appellant's counsel.

 On February 11, 2008, the trial court conducted the hearing on appellee's motion
for temporary orders. At the hearing, Hinojosa stated that appellant was unable to attend
because he was still in Afghanistan and orally moved the trial court to continue the hearing
and to deny the outstanding sanctions motion. Hinojosa also stated that appellant was a
civilian contractor in Afghanistan; appellant was not military personnel; and the reason for
appellant's absence at the hearing was that he was in a Jordanian hospital receiving
treatment for an unspecified infirmity. In addition, the parties discussed the nature of
appellant's job and compensation. Appellee's counsel represented to the trial court that
appellant was paid around $67,000 per year under a contract and that the contract
provided for a 10% "completion bonus." She also stated that appellant's income was not
taxed because it was earned overseas. Hinojosa disputed the contentions made by
appellee's counsel. Hinojosa represented that appellant only makes $67,295 per year,
including all bonuses, and that he paid taxes on his earnings, as indicated by a tax return
filed with the Internal Revenue Service. (4) Hinojosa then requested that the trial court award
at most $840 per month in temporary child support. The trial court subsequently ordered
that: (1) appellant pay $1,000 in child support per month to appellee; (2) appellant
maintain R.L. under his health insurance; (3) the parties' serve as joint conservators of R.L.
with standard visitation rights; (4) appellee maintain exclusive use and possession of the
parties' house; and (5) appellant comply with the previous discovery orders. The trial court
set the case for final hearing on March 6, 2008.

 Hinojosa filed another motion for continuance on February 22, 2008, and on March
5, 2008, he filed a motion to withdraw as counsel for appellant. Each of these motions was
set to be heard at the March 6, 2008 hearing; however, the trial court reset the hearing on
the pending motions to March 10, 2008.

 The trial court conducted a final hearing in this matter on March 10, 2008. At the
hearing, Hinojosa appeared and expressed to the trial court that appellant no longer
wished for counsel to withdraw and urged yet another oral motion for continuance. 
Counsel once again expressed that appellant was in Afghanistan and was not able to
attend the hearing because his employment contract would be terminated. Appellee
objected to appellant's oral motion for continuance; the trial court subsequently denied
appellant's motion. Appellee also re-urged her motion to compel and for sanctions. 

 The trial court denied appellant's unverified motion for rehearing that had been
carried with the case. Appellant's pleadings were stricken, and appellant was, once again,
ordered to pay the $500 in sanctions previously imposed. (5) The trial court then heard
testimony from appellee. (6) Appellee testified that: (1) the parties have a twelve-year-old
child; (2) the parties' house is in her name; (3) appellant has a retirement account with an
unknown balance; (4) she has a retirement account worth approximately $90,000; (5)
appellant sent her $1,500 per month for several months for the house payment and to
support R.L.; and (6) appellant told her that he made around "100-and-so-[thousand] a
year." Appellee requested that appellant be required to maintain the child on his health
insurance policy, she be paid retroactive child support, appellant not be granted visitation
with the child outside the country, and she be granted the parties' house. Appellee also
provided the trial court with a list of items that were appellant's separate property. After
hearing appellee's testimony, the trial court granted the divorce and all relief requested by
appellee. 

 On May 23, 2008, appellant filed a motion for new trial, alleging that the trial court: 
(1) did not divide the community property in a fair and just manner; (2) failed to properly
calculate child support and retroactive child support; and (3) failed to award him proper
visitation with the parties' child. The trial court set the hearing on appellant's motion for
new trial for June 25, 2008.

 However, prior to the June 25, 2008 hearing, appellee filed an "Emergency Motion
for Clarification of Prior Order for Possession or Access." At the hearing on this motion on
May 29, 2008, appellee argued that appellant should not be granted "overnight"
supervision with the parties' child because: (1) R.L. does not have a bond with appellant;
(2) R.L. has stated that he does not wish to spend the night with appellant; and (3)
appellant does not intend to reside in the United States. After speaking with R.L., the trial
court took the matter under advisement. (7)

 At the hearing on appellant's motion for new trial, Hinojosa explained appellant's
absence from the March 10, 2008 final hearing. Appellee's counsel recounted the
procedural history of this case and noted appellant's repeated failure to produce responses
to discovery propounded to him. Appellee's counsel also requested that the trial court
order appellant to pay his child support obligations and the previously granted attorney's
fee award. The trial court denied appellant's motion for new trial on August 4, 2008. No
requests for findings of fact or conclusions of law were made by either party. This appeal
followed. 

II. Standard of Review

 We review the trial court's denial of a motion for new trial for an abuse of discretion. 
In re R.R., 209 S.W.3d 112, 114 (Tex. 2006); see Ricks v. Ricks, 169 S.W.3d 523, 526
(Tex. App.-Dallas 2005, no pet.). A court abuses its discretion if it acts arbitrarily,
unreasonably, or without reference to guiding rules and principles. See Ricks, 169 S.W.3d
at 526; see also Loehr v. Loehr, No. 13-08-00380-CV, 2009 Tex. App. LEXIS 6863, at *6
(Tex. App.-Corpus Christi Aug. 28, 2009, no pet.) (mem. op.).

 A trial court does not abuse its discretion if there is some evidence of a substantive
and probative character to support its decision. Garza v. Garza, 217 S.W.3d 538, 549
(Tex. App.-San Antonio 2006, no pet.). In family law cases, the abuse of discretion
standard of review overlaps with the traditional sufficiency of the evidence standards of
review, and therefore, legal and factual sufficiency are not independent grounds of
reversible error. Id. Instead, legal and factual sufficiency are factors relevant to our
assessment of whether the trial court abused its discretion. Id.; see Zorilla v. Wahid, 83
S.W.3d 247, 252 n.1 (Tex. App.-Corpus Christi 2002, no pet.) (holding that the normal
sufficiency standard of the evidence review is part of the abuse of discretion review and
not an independent ground for reversal and declining to follow the minority rule--"(1) did
the trial court have sufficient information upon which to exercise its discretion; and (2) did
the trial court err in its application of discretion"--in analyzing abuse of discretion).

 Moreover, because no findings of fact or conclusions of law were requested, we
must affirm the judgment of the trial court on any legal theory that is supported by the
evidence. See EZ Pawn Corp. v. Gonzalez, 921 S.W.2d 320, 322 (Tex. App.-Corpus
Christi 1996, writ denied); see also Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex.
1989) (holding that, in the absence of findings of fact and conclusions of law, the trial court
is presumed to have found the necessary facts in support of its judgment if there is any
probative evidence to support such findings). 

III. The Trial Court's Division of the Community Estate

 By his first issue, appellant contends that the trial court's division of the community
estate was unjust and unfair because it relied upon appellee's testimony at the March 10,
2008 hearing, which was "[c]onfusing, [u]nreasonable[,] and [i]ts [c]redibility was
[q]uestionable." Appellee argues that the trial court's division of the community estate was
equitable and her testimony was clear, uncontradicted, and unequivocal, and therefore, the
trial court did not abuse its discretion. 

A. The Division of the Community Estate

 The Texas Family Code requires the trial court to "order a division of the estate of
the parties in a manner that the court deems just and right, having due regard for the rights
of each party . . . ." Tex. Fam. Code Ann. § 7.001 (Vernon 2006). We review the trial
court's division of the property in a divorce decree under an abuse of discretion standard. 
Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). "Mathematical precision in dividing
property on divorce is usually not possible." Id. at 700. Wide latitude and discretion rests
with the trial court, and it "is empowered to use its legal knowledge and its human
understanding and experience." Id.; see Vallone v. Vallone, 644 S.W.2d 455, 460 (Tex.
1982). We will reverse on appeal only if the property division is so disproportionate as to
be manifestly unjust and unfair. Barnard v. Barnard, 133 S.W.3d 782, 787 (Tex. App.-Fort
Worth 2004, pet. denied); Smith v. Smith, 22 S.W.3d 140, 143 (Tex. App.-Houston [14th
Dist.] 2000, no pet.). A trial court is presumed to have properly exercised its discretion in
dividing the assets of a marriage. Murff, 615 S.W.2d at 699; see Saldana v. Saldana, 791
S.W.2d 316, 319 (Tex. App.-Corpus Christi 1990, no writ).

 Community property does not need to be divided equally, but the division must be
equitable. See Kimsey v. Kimsey, 965 S.W.2d 690, 704 (Tex. App.-El Paso 1998, pet.
denied). In determining whether the division of the community estate is equitable, the trial
court may consider the following non-exclusive factors: (1) the spouses's capacities and
abilities; (2) benefits that the party not at fault would have derived from the continuation of
the marriage; (3) business opportunities; (4) education; (5) physical conditions of the
parties; (6) the relative financial conditions and obligations of the parties; (7) size of the
separate estates; (8) the nature of the property; (9) disparities in earning capacities and
income; (10) the fault of the breakup of the marriage; and (11) any wasting of the
community assets by one of the spouses. Murff, 615 S.W.2d at 698-99; see Garcia v.
Garcia, 170 S.W.3d 644, 653 (Tex. App.-El Paso 2005, no pet.); see also Combe-Ovadia
v. Combe-Ovadia, No. 14-04-01028-CV, 2006 Tex. App. LEXIS 6844, at **5-6 (Tex.
App.-Houston [14th Dist.] Aug. 3, 2006, no pet.) (mem. op.) (citing Schlueter v. Schlueter,
975 S.W.2d 584, 589 (Tex. 1998); Murff, 615 S.W.2d at 699). 

B. Discussion

 Appellant, relying heavily on the interested witness rule as outlined in Ragsdale v.
Progressive Voters League, asserts that appellee's testimony was unreasonable and
riddled with inconsistencies and, therefore, did no more than raise a fact issue to be
determined by the fact finder with respect to the division of the community estate. See 801
S.W.2d 880, 882 (Tex. 1990) ("It is the general rule that the testimony of an interested
witness, such as a party to the suit, though not contradicted, does no more than raise a
fact issue to be determined by the jury.") (citing McGilliard v. Kuhlmann, 722 S.W.2d 694
(Tex. 1986); Cochran v. Wool Growers Cent. Storage Co., 140 Tex. 184, 166 S.W.2d 904,
908 (1942)). Appellant, however, failed to note the following exception to the interested
witness rule:

 But there is an exception to this rule, which is that where the testimony of an
interested witness is not contradicted by any other witness, or attendant
circumstances, and the same is clear, direct and positive, and free from
contradiction, inaccuracies, and circumstances tending to cast suspicion
thereon, it is taken as true, as a matter of law.

 

 . . . .

 

 The exception to [this] interested witness rule . . . is especially true where the
opposing party has the means and opportunity of disproving the testimony,
if it is not true, and fails to do so . . . . In other words, failure to contradict is
another factor to be considered by the court; but it does not necessarily
preclude the holding that a fact issue is raised when . . . there are
circumstances in evidence tending to discredit or impeach the testimony of
the interested witness.


Id. (citing McGilliard, 722 S.W.2d at 694; Anchor Cas. Co. v. Bowers, 393 S.W.2d 168,
169-70 (Tex. 1965); Cochran, 166 S.W.2d at 908) (bracket in original). 

 Here, appellant presented no evidence contradicting appellee's testimony and does
not direct us to any evidence in the record contradicting appellee's testimony. On cross-examination, appellant's counsel did reference appellant's employment contract that was
purportedly worth $67,295, but this contract was never entered into evidence. In reviewing
appellee's testimony from the March 10, 2008 final hearing, we cannot say that appellee's
testimony is so unreasonable or inconsistent as to merely raise a fact issue, especially
considering that appellant had numerous opportunities to tender evidence that contradicted
appellee's testimony and appellant was afforded the opportunity to cross-examine
appellee. See id. We therefore conclude that the exception to the interested witness rule
applies in this case. See id. Further, even if the evidence merely raised a fact issue, as
appellant suggests, the trial court was empowered to evaluate the weight of the evidence
as the fact finder in this case, and we must defer to trial court's resolution of the evidence. 
See O'Carolan v. Hopper, 71 S.W.3d 529, 533 n.4 (Tex. App.-Austin 2002, no pet.)
(stating that the fact finder is the sole judge of the weight and credibility of the evidence).

 In any event, appellee testified that appellant made $74,000 per year under his
employment contract and that he usually received a bonus at the end of every year. 
Appellee further testified that appellant told her that he made "100-and-so-[thousand] a
year," which presumably accounted for appellant's salary under the contract and his yearly
bonus, and that appellant's salary was non-taxable because it was earned overseas. 
Appellee noted that: (1) appellant sent her $1,500 per month for six to eight months, which
was supposed to be used to make the house payment and for support of R.L.; (2) she is
the primary caregiver for R.L.; and (3) appellant only returns to the United States a couple
times a year for a few days. With respect to the items contained in the house, appellee
stated that most of the items were gifts to her from appellant but that some of the gifts were
items from overseas and that she thought appellant should have them. Appellee further
clarified that appellant should have the following items:

 Jewelry; he has some guns; some ammo; he has a collection of Cachina
dolls; liquor; and wine bottles; shot glasses; he has decorative plates, which
are plates that just, you know, how--that say where they're from.


 . . . .


 A computer chair; his clothing; rugs; some curtains; his air heads; he's got
a lot of just like souvenirs from where he's been; T-shirts; stuff like that; the
safe; the crystal wine glasses that he has; and of course a shelf that he
made back in--when he was in high school. 


Appellee also testified that appellant should be awarded the truck that he was driving and
that she should get the house, some chandeliers, a china set, the vehicle that she was
driving, and all remaining items the couple owned and were not explicitly referenced by
appellee.

 On cross-examination, appellee admitted that her testimony that appellant made
"100-and-so-[thousand] a year" was based solely on what he had told her when he was
applying to extend his employment contract. Appellee denied ever seeing appellant's
contract but recalled that she had been told by her counsel that appellant's contract was
for $67,295. Appellee denied using the couple's joint bank account once appellant had
filed for divorce. Appellee testified that: (1) the couple bought the house in September
2001 for $89,000; (2) the money used to make the house payments was earned by both
her and appellant; (3) there is $10,000 in equity in the house; and (4) the monthly house
payment is $1,092.

 Appellee later testified to the following regarding the house: "The house is under
my name. And he was paying for the house because he had told me, I'll pay for the house
and you pay everything else, is what I'm doing." Appellee also testified that she has
$90,000 in her retirement account from twenty-three years of service as a school teacher
and that appellant has a retirement account from which he has repeatedly withdrawn and
that has an unknown balance. 

 Based on appellee's testimony, we conclude that there was sufficient probative
evidence from which the trial court could conclude that a disproportionate division of the
community estate was just and right, and we cannot say, as appellant suggests, that the
record before us demonstrates that the trial court's division of the community estate is
manifestly unjust or unfair. See Murff, 615 S.W.2d at 698-99; Barnard, 133 S.W.3d at 787;
Smith, 22 S.W.3d at 143; see also Handley v. Handley, 122 S.W.3d 904, 907 (Tex.
App.-Corpus Christi 2003, no pet.); O'Carolan, 71 S.W.3d at 533 n.4. Furthermore,
because appellant failed to participate in discovery as ordered by the trial court, we are left
with a record that is devoid of evidence contradicting appellee's testimony and overcoming
the presumption that the trial court properly exercised its discretion in dividing the assets
of a marriage. See Murff, 615 S.W.2d 696, 699 (Tex. 1981); see also Saldana, 791
S.W.2d at 319. Thus, we overrule appellant's first issue.

IV. Child Support

 In his second issue, appellant asserts that the trial court abused its discretion in
calculating child support and retroactive child support. Specifically, appellant argues that
the trial court's award of $1,000 per month in child support is not supported by credible
evidence.

A. Applicable Law

 A trial court has discretion to establish child support within the parameters set out
in the child support guidelines of the Texas Family Code. Rodriguez v. Rodriguez, 860
S.W.2d 414, 415 (Tex. 1993); Scott v. Younts, 926 S.W.2d 415, 419 (Tex. App.-Corpus
Christi 1996, writ denied). A trial court's order of child support will not be disturbed on
appeal unless the complaining party can show a clear abuse of discretion. Rodriguez, 860
S.W.2d at 415; Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Office of the Att'y
Gen. v. Buhrle, 210 S.W.3d 714, 717 (Tex. App.-Corpus Christi 2006, pet. denied); see
In re M.K.R., 216 S.W.3d 58, 61 (Tex. App.-Fort Worth 2007, no pet.) (holding that issues
regarding the payment of child support, including confirmation of child support arrearage,
are reviewed under an abuse of discretion standard). In determining whether the trial court
abused its discretion, we view the evidence in the light most favorable to the trial court's
action, indulging every presumption in favor of the judgment. See Zorilla, 83 S.W.3d at
253; see also Warren v. Warren, No. 13-05-00429-CV, 2008 Tex. App. LEXIS 1859, at *5
(Tex. App.-Corpus Christi Mar. 13, 2008, no pet.) (mem. op.). If some probative and
substantive evidence supports the trial court's findings, the trial court did not abuse its
discretion. Zorilla, 83 S.W.3d at 253.

 The trial court may order either or both parents to support a child in the manner
specified by the order. Tex. Fam. Code Ann. § 154.001. In other words, each party has
a duty to support his or her minor child. Id. § 151.001(b); see Villasenor v. Villasenor, 911
S.W.2d 411, 419 (Tex. App.-San Antonio 1995, no writ). Under section 154.001, a trial
court must order payment of child support "once financial need and ability to pay [are]
established." Orsak v. Orsak, 642 S.W.2d 566, 567 (Tex. App.-Dallas 1982, no writ)
(citing Grandinetti v. Grandinetti, 600 S.W.2d 371, 372 (Tex. Civ. App.-Houston [14th Dist.]
1980, no writ)). For purposes of determining child support liability, the trial court shall
calculate net resources, including all wage and salary income and other compensation for
personal services, interest, dividends and royalty income, self-employment income, net
rental income, and all other income actually being received. Tex. Fam. Code Ann. §
154.062(a), (b). Further, there must be some evidence in the record of a substantive and
probative character of net resources in order for this duty to be discharged. Newberry v.
Bohn-Newberry, 146 S.W.3d 233, 236 (Tex. App.-Houston [14th Dist.] 2004, no pet.). 

 Moreover, in Garner v. Garner, the Dallas Court of Appeals noted the following with
respect to the calculation of child support:

 Chapter 154 of the Texas Family Code establishes a multiple-step
process for determining the amount of child support. The trial court must first
determine the parties' gross income, net income, and monthly net resources. 
And, each party is required to furnish information sufficient to identify the
party's net resources and ability to pay support, such as production of copies
of income tax returns, financial statements, and pay stubs. After determining
the amount of net resources, the trial court must decide whether to apply the
child support guidelines or whether application of the guidelines would be
unjust or inappropriate. Importantly, a parent's child support obligation is not
limited to that parent's ability to pay from current earnings; rather it extends
to his or her financial ability to pay from any and all available sources.


See 200 S.W.3d 303, 306 (Tex. App.-Dallas 2006, no pet.) (emphasis added); see also
Santillan v. Campos, No. 04-08-00904-CV, 2009 Tex. App. LEXIS 8301, at **8-9 (Tex.
App.-San Antonio Oct. 21, 2009, no pet. h.) (mem. op.).

B. Discussion

 Appellant once again argues that appellee's testimony was inconsistent and
unreliable and the trial court abused its discretion by relying on her testimony in calculating
child support and awarding appellee retroactive child support. Appellant further argues that
according to the child support tables promulgated by the Texas Attorney General's Office,
his child support obligation should have been only $775.89 per month rather than $1,000
per month. 

 However, in making his arguments, appellant references evidence not in the record
before us, including the purported employment contract, a tax return allegedly filed by
appellant showing taxable income of $48,000, and a revised calculation of child support
apparently based on the child support tables promulgated by the Texas Attorney General's
Office. See Gonzalez v. Villarreal, 251 S.W.3d 763, 777 n.17 (Tex. App.-Corpus Christi
2008, pet. dism'd w.o.j.) (holding that the attachment of documents as exhibits or
appendices to appellate briefs is not formal inclusion in the record on appeal and therefore,
the documents cannot be considered); see also Nguyen v. Intertex, Inc., 93 S.W.3d 288,
293 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (same). Furthermore, despite
numerous opportunities to do so, appellant failed to provide any evidence to refute the
testimony of appellee regarding his income. See Tex. Fam. Code Ann. § 154.063(1)
(providing that each party is required to provide the trial court with information sufficient to
accurately identify the party's net resources and ability to pay child support); see also
Garner, 200 S.W.3d at 306. As previously noted, appellee testified that appellant made
at least $74,000 per year in income and that he has told her that he made "100-and-so-[thousand] a year" once bonuses and other income sources were accounted for. The trial
court, in the final divorce decree, concluded that appellant was responsible for $1,000 in
monthly child support and was $7,800 in arrears in paying child support. 

 As we have already concluded, appellee's testimony was not confusing or
inconsistent, and we applied the exception to the interested witness rule. See Ragsdale,
801 S.W.2d at 882. Further, as the fact finder, the trial court weighed the evidence, and
we must defer to the fact finder's resolution of the evidence. See O'Carolan, 71 S.W.3d
at 533 n.4. Because appellee's testimony regarding appellant's income provided the trial
court with information regarding appellant's net resources and because appellant failed to
provide evidence refuting appellee's testimony regarding his net resources, we conclude
that appellee's testimony regarding appellant's salary constitutes "some evidence of a
substantive and probative character of net resources" and appellant's ability to pay child
support. Newberry, 146 S.W.3d at 236 (citing Tex. Fam. Code Ann. § 154.062); see Zorilla,
83 S.W.3d at 253. Thus, we conclude that the trial court did not abuse its discretion in
awarding appellee $1,000 per month in child support. See Rodriguez, 860 S.W.2d at 415;
Worford, 801 S.W.2d at 109; see also Buhrle, 210 S.W.3d at 717; In re M.K.R., 216
S.W.3d 58, 61; Nordstrom v. Nordstrom, 965 S.W.2d 575, 578 (Tex. App.-Houston [1st
Dist.] 1997, pet. denied).

 Appellant also challenges the award of $7,800 in retroactive child support, but he
does not make a clear and concise argument for his contention that the trial court abused
its discretion, nor does he cite to case law in support of his contention. As a result, we
conclude that appellant has inadequately briefed this sub-issue. See Tex. R. App. P.
38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record."). Therefore,
we overrule appellant's second issue.

V. Visitation

 In his third issue, appellant argues that the trial court abused its discretion in
depriving him of reasonable visitation with R.L. Specifically, appellant asserts that the trial
court erroneously relied upon appellee's testimony, which was not credible and riddled with
inconsistencies, and that the visitation order was "draconian." Appellee counters by
arguing that the trial court did not abuse its discretion in deriving its visitation order because
her testimony at the March 10, 2008 hearing was unequivocal and uncontradicted and that
the evidence adduced at the hearing demonstrated that: (1) appellant rarely visits R.L.; (2)
appellant and R.L. do not have a bond; (3) R.L. does not wish to spend nights with
appellant; and (4) appellant does not intend to reside in the United States. 

A. Applicable Law

 Trial courts are afforded wide discretion in making determinations of custody
possession and visitation. In re C.R.T., 61 S.W.3d 62, 65 (Tex. App.-Amarillo 2001, pet.
denied) (citing Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982)). Abuse of the
court's discretion is shown only when it acts without reference to any guiding rules or acts
arbitrarily or unreasonably. Id. Our review must also give deference to the trial court
because it is in the best position to observe the demeanor of the witnesses and evaluate
their credibility. In re De la Pena, 999 S.W.2d 521, 526 (Tex. App.-El Paso 1999, no pet.). 
An abuse of discretion ordinarily does not occur when the trial court bases its decision on
conflicting evidence. See In re K.R.P., 80 S.W.3d 669, 674 (Tex. App.-Houston [1st Dist.]
2002, pet. denied). Moreover, the evidence need not be compelling or conclusive to
support the trial court's exercise of discretion. See Holley v. Holley, 864 S.W.2d 703, 706
(Tex. App.-Houston [1st Dist.] 1993, writ denied) (holding that there was no abuse of
discretion if some evidence of a substantive and probative character supported the
decision); see also Stevens v. Stevens, No. 03-98-00687-CV, 1999 Tex. App. LEXIS 6334,
at *6 (Tex. App.-Austin Aug. 26, 1999, no pet.) (mem. op.).

 The best interest of the child is always the primary consideration in determining
issues of conservatorship and possession. Tex. Fam. Code Ann. § 153.002 (Vernon 2008). 
"It is the policy of this state to encourage frequent contact between a child and each parent
for periods of possession that optimize the development of a close and continuing
relationship between each parent and child." Id. § 153.251(b) (Vernon 2008). Yet, there
is no requirement that joint managing conservators be awarded equal or nearly equal
periods of possession. Id. § 153.135 (Vernon 2008); Garza, 217 S.W.3d at 552.

B. Discussion

 The crux of appellant's complaint pertaining to visitation is that the trial court relied
solely upon appellee's testimony, which was allegedly unreliable and inconsistent. Here,
appellee testified that appellant had continually worked in Afghanistan since R.L. was four
years old. She further testified that as a result of appellant's absence, appellant and R.L.
did not have a bond and that R.L. did not wish to spend the night with appellant. She did
note that appellant usually returned to the United States to visit R.L. twice a year--for
Christmas and R.L.'s birthday--and that appellant had only missed one of R.L.'s birthdays. 
However, appellee recalled the following with respect to the appellant's visits with R.L.:

 Q [Appellee's counsel]: When he has come down and visits with him,
does he spend all the time with him or not?

 

 A [Appellee]: No. I would say like maybe 15 minutes, you
know, in the morning; 15 minutes maybe in the
afternoon playing video games. But the majority
of the time he's [appellant] on his computer on
his lap[ ]top. 


She also noted that appellant expressed to her that he had no intention of moving back to
the United States.

 As noted earlier, we cannot say that appellee's testimony is inconsistent or
unreliable. Moreover, as the fact finder, the trial court was in the best position to observe
the demeanor of appellee and determine her credibility; thus, we must defer to the trial
court's resolution of the evidence. See In re De la Pena, 999 S.W.2d at 526. 

 We now turn to appellant's contention that the visitation order was "draconian." In
reviewing the portion of the final divorce decree regarding visitation, the trial court granted
a standard visitation order with the following additional requirement, which appellant
appears to complain about on appeal:


 There will not be any overnight visitation between [appellant] and
[R.L.] as long as [appellant] is employed outside of the United States of
America. After [appellant] returns to live in the United States of America and
permanently established [sic] his residence in the United States of America,
standard overnight visitation will be allowed. 


Earlier in the decree, the trial court noted that there was credible evidence presented that:
(1) appellant had previously threatened to take away appellee's right to access R.L.; (2)
appellant lacks financial reason to stay in the United States; (3) appellant has strong
"financial, emotional, or cultural ties to another country" where he is employed; and (4)
appellant lacks strong ties to the United States. Thus, the trial court prohibited appellant
from taking R.L. outside the United States.

 On appeal, appellant cites the following statements made by the trial court at the
hearing on appellee's emergency motion to modify visitation in arguing that the visitation
order was "draconian":


 The important thing here, R.L., is, like I said, understand that the conflict
between your mom and your dad is the conflict between your mom and your
dad. It's not you. And your mom wants what's best for you. And I believe
firmly that your daddy does, too. You know, work with it. Work with it. And
let your dad know you love him, too. He's your dad.


 And mom knows you love her, too. Dad is maybe trying to make up
for lost time because you have been--because he's been away. And you
have to appreciate the fact that because he's been away working, maybe
he's been able to provide a little bit better living for you and your mom. And
I don't think there was any issue here with the Court that he has not been a
provider for the family in the past.


Appellant then states that "[i]t is difficult to envision a single guiding principle relied upon
by the trial court, including the 'best interest of the child' standard, after reviewing the
record of his soliloquy . . . where he denied standard visitation to [appellant] until he resides
permanently in the United States." 

 However, in reviewing appellant's arguments and the record on appeal, we cannot
say that the trial court abused its discretion in rendering its visitation order. See In re
C.R.T., 61 S.W.3d at 65; see also Holley, 864 S.W.2d at 706. We find that the trial court
was reasonable in imposing a restriction on appellant with respect to overnight visits given
appellant's desire to remain overseas, often in locales mired in violence. See Tex. Fam.
Code Ann. § 153.001(a)(2) (Vernon 2008) (providing that, among other things, it is the
public policy of this state to "provide a safe, stable, and nonviolent environment for the
child . . . ") (emphasis added). Because the trial court did not abuse its discretion, we
overrule appellant's third issue.

VI. Appellant's Motion for Continuance

 In his fourth issue, appellant argues that the trial court abused its discretion in
denying the oral motion for continuance he made at the March 10, 2008 final hearing. The
granting of a continuance rests within the sound discretion of the trial court. See BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002); see also McClure v.
Attebury, 20 S.W.3d 722, 729 (Tex. App.-Amarillo 1999, no pet.) (holding that all courts
have inherent power to grant or deny a continuance); Humphrey v. Ahlschlager, 778
S.W.2d 480, 482 (Tex. App.-Dallas 1989, no writ). A trial court abuses its discretion when
it reaches a decision so arbitrary and unreasonable that it amounts to a clear and
prejudicial error of law. BMC Software, 83 S.W.3d at 800. 

 In his notice of appeal, appellant stated that he was solely appealing the trial court's
August 4, 2008 denial of his motion for new trial. However, on appeal, appellant also
complains about the trial court's denial of his oral motion for continuance. Because
appellant expressed in his notice of appeal that he was only appealing the trial court's
denial of his motion for new trial, we focus our review solely on the contents of appellant's
motion for new trial and the trial court's evaluation of the motion rather than appellant's
extraneous arguments pertaining to the trial court's denial of his oral motion for
continuance. See Tex. R. App. P. 25.1(d)(2) (requiring appellant to specify the date of the
judgment or order appealed from); see also Parrish v. Rutherford, 159 S.W.3d 114, 117
(Tex. App.-Corpus Christi 2004, no pet.) (holding that an issue was not preserved for
appeal because appellants' notice of appeal failed to specify the order from which the
purported issue arose). 

 Even assuming, arguendo, that appellant had properly preserved this issue for
appeal, we note that the record does not contain an affidavit demonstrating sufficient cause
for his requested continuance. See Tex. R. Civ. P. 251 ("No application for a continuance
shall be heard before the defendant files his defense, nor shall any continuance be granted
except for sufficient cause supported by affidavit, or by consent of the parties, or by
operation of law."); see also Mathew v. McCoy, 847 S.W.2d 397, 399-400 (Tex.
App.-Houston [14th Dist.] 1993, no writ) (holding that a motion for continuance must be
verified and that the court of appeals must presume the trial court did not abuse its
discretion in denying a motion for continuance that was not verified) (citing Villegas v.
Carter, 711 S.W.2d 624, 626 (Tex. 1986); City of Houston v. Blackbird, 658 S.W.2d 269,
272 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd)). Based on the foregoing, we
overrule appellant's fourth issue.

VII. Conclusion

 Because we have concluded that the trial court's division of the community estate
and calculation of child support, retroactive child support, and visitation were reasonable
and supported by some evidence of substantive and probative character, we cannot say
that the trial court abused its discretion in denying appellant's motion for new trial. See In
re R.R., 209 S.W.3d at 114; Ricks, 169 S.W.3d at 526; see also Garza, 217 S.W.3d at
549; Zorilla, 83 S.W.3d at 252 n.1. Therefore, having overruled all of appellant's issues
on appeal, we affirm the judgment of the trial court.



 

 DORI CONTRERAS GARZA,

 Justice


Delivered and filed the 

17th day of December, 2009.
1. The child, R.L., was twelve years old at the time of the final hearing.
2. The transcript of the hearing on appellee's motions to compel and for sanctions was not filed with
this Court. 
3. The circumstances of appellant's job and station in Afghanistan was a point of contention in the trial
court. Appellant initially contended that he was stationed in Afghanistan as a contractor whose purpose was
to support the United States military. Thus, appellant argued that his status was essentially the same as that
of United States military personnel, and therefore, he was entitled to the rights and privileges afforded under
the Servicemembers Civil Relief Act (the "Act")--namely, protection from having a default judgment entered
against him in any civil action or proceeding. See 50 U.S.C. § 521(a) (2008). However, at a hearing on
appellee's motion for temporary orders, appellant's counsel admitted that appellant was working in
Afghanistan as a civilian. Appellee testified at a later hearing that appellant was not military personnel and,
therefore, was not entitled to protection under the Act. Furthermore, appellant has not directed us to, nor are
we aware of, any provision in the Act or case law interpreting the Act to protect civilian contractors who are
not serving in the military. 
4. Neither appellant's purported employment contract nor the tax return were admitted into evidence.
5. Appellant does not complain about the trial court's imposition of sanctions for discovery abuse in this
appeal.
6. Appellant did not put forth evidence at the March 10, 2008 final hearing. The only evidence
contained in the record is appellee's testimony at the March 10, 2008 final hearing.
7. The record does not contain an order or an oral ruling granting or denying appellee's emergency
motion. Instead, the trial court noted the following:


 Well, but Counsel, again I don't think that [the] clause on Page 13 of the decree has been
met satisfactorily. I don't know that he's entitled to overnight visitation without showing some
kind of proof [of residency in the United States], so I--you know, based on what's been
ordered by the Court, I don't know that he's entitled to overnight yet.